## NEW YORK SUPERIOR COURT.

### Peter R. Strong agt. Mary E. Strong.

In an action of *divorce* for adultery, the defendant on showing the court a reasonable prospect of establishing the defence, may have leave to *amend or file a supplemental answer*, by setting up the defence of *adultery* against the plaintiff, having discovered the fact after the issues in the cause were first joined.

*Special Term, January,* 1865.

This is an application to amend or file a supplemental answer alleging adultery on the part of the plaintiff. the fact having been discovered after the issues were first joined.

McCunn, J.   Under section 173 of the Code, the court has full discretion on the subject where it is in furtherance of justice, and where such amendments are clearly made in good faith.   (*Cartledge* agt. *Cartledge,* 8 *Jur. N. S.* 493; *Smith* agt. *Smith,* 4 *Paige's Rep.* 435.)   Although amendments owing to laches may be refused in other cases, yet in actions for divorce the privilege of amending so as to set up a valid defence, is not only allowable at any time before trial, but the court should of its own motion, require any valid defence to be interposed of which it had any knowledge (*Smith* agt. *Smith,* 4 *Paige,* 425).

The contract of marriage differs from all other contracts; its continuance does not depend on the will or consent of the parties.   Public policy forbids that it should be judicially dissolved, unless there be in fact an adequate cause for its dissolution; the courts will not permit a marriage to be dissolved in consequence of the negligence or collusion of the parties.   The statutes declare (3 *R. S. 5th ed.* p. 236, § 55) that although the offence charged be established, yet if condonation or adultery by plaintiff appear, the plaintiff shall not obtain a divorce, and for the purpose of enforcing this policy, the courts have invariably

compelled parties to allege in their complaints the non-existence of every defence named in the statute (*Smith* agt. *Smith*, 4 *Paige's Rep.* 435, 436). In the case last cited, the court of chancery laid down as a rule the principle that the sacred ties of marriage cannot be dissolved by consent or negligence, when a good and valid defence exists, and the cases in the English courts are numerous in establishing this doctrine. So jealous are the English people of any encroachments on the sacred obligations of marriage, that the statute of 23 and 24 Victoria, chap. 144, was passed, making it the duty of the crown's proctor to intervene in case he suspects collusion between the parties; indeed the statutes of Victoria above cited, go so far as to allow a stranger after interlocutory judgment, to appear and show cause why final judgment should not be pronounced, by reason of any collusion between the parties, or that material facts have not been brought before the court, and the act declares that the decree shall not be made absolute in the first instance, but that a time not less than three months shall be fixed by the court to allow parties to come in and show cause why the divorce should not be granted. Under the English statutes the courts will receive evidence of the charge of collusion at any time after verdict and before final judgment, and any neglect on the part of the defendant to make the proper defence, such as adultery, is acted upon in the same manner. (*Pollock* agt. *Pollock*, 8 *Jur. N. S.* 1230; *Lautuor* agt. *Lautuor*, 31 *Law Jur. N. S. Prol. mat. and ad. p.* 66; *S. C.* 2 *Swabey & Trist's Div. Cases*, 524; *Boulton* agt. *Boulton*, 2 *Swabey & Trist's Rep. pp.* 405, 638, 639.)

Chancellor WALWORTH, in the case of *Smith* agt. *Smith*, in laying down a similar doctrine, held that the court will of its own motion act in such cases, and see that all valid reasons for not granting a divorce be fairly brought before it. The reason why courts have pursued this course is, that marriage is a contract of a peculiar nature, and they

have always looked upon it as a sacred ordinance, having its origin in the divine and natural law, differing from all other contracts, for the rights and obligations arising from it are not left entirely to be regulated by the agreement of the parties, but are to. a certain extent, controlled by matters of municipal regulations, over which the parties have no control; unlike other contracts, it cannot be dissolved by mutual consent, and it subsists in full force even though the parties are possessed of incurable insanity, and the state will not allow it to be dissolved except upon the complaint of an innocent party, and for the crime of the other party. Innocence on one side and guilt on the other are alike indispensable.

In this case opposing affidavits have been introduced to impeach the proposed amendments, and I think at this stage of the proceedings it would be improper for me to pass upon the question of the veracity of the witnesses, especially in a case of this nature. Witnesses on both sides in this class of cases are generally persons of tarnished reputation, for other witnesses can very rarely be obtained, and it is undoubtedly the province of the jury to pass upon the truth or falsity of their testimony. My duty on this motion is simply to ascertain whether the defendant has a reasonable prospect of establishing one of her recriminating charges; if I think she has, this alone will give her the right to amend. In the early part of the proceedings the defendant had a perfect right to interpose this defence, if she had known the facts alleged. The plaintiff is not therefore prejudiced, and her non-compliance with the rules of order in matter of practice, I am satisfied, did not arise from any disrespect to the court or from any contempt of the law.

The amendment should be allowed.